Kyle McLean (SBN 330580)
kmclean@sirillp.com
Lisa R. Considine (*pro hac vice* to be filed)
lconsidine@sirillp.com
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Main: 213-376-3739

*Attorneys for Plaintiffs and the putative classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMIKA HUESTON, BUNDY LANEY, CECILY MOODY, JATTIYA DAVIS, and DANIELLE CAINES on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>WESTLAKE PORTFOLIO MANAGEMENT, LLC,<br><br>   Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br> **1. UNFAIR COMPETITION LAW**<br> **2. BREACH OF CONTRACT**<br> **3. UNJUST ENRICHMENT**<br> **4. TRUTH-IN-LENDING ACT**<br> **5. UNIFORM COMMERCIAL CODE, ARTICLE 9**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiff Tamika Hueston, Bundy Laney, Cecily Moody, Jattiya Davis, and Danielle Caines (collectively, "Plaintiffs"), by and through their undersigned attorneys, on behalf of themselves and all others similarly situated, states and alleges matters pertaining to themselves and their own acts, upon personal knowledge, and as to all other matters, upon information and belief, based upon the investigation undertaken by his counsel, as follows:

## I.  INTRODUCTION

1.     Plaintiffs bring this action for Class Action Complaint for damages and injunctive relief against Defendant Westlake Portfolio Management, LLC ("Westlake") for Defendant's common course of unlawful and fraudulent conduct in connection with the motor vehicle financing, servicing of motor vehicle loans, and repossessions of motor vehicles.

2.     Defendant services motor vehicle finance agreements for consumers that originally purchased and financed vehicles from U.S. Auto Sales, Inc. and/or U.S. Auto Finance, Inc. (collectively "US Auto").

3.     Defendant, as a loan servicer, may only collect fees and other amounts authorized by the consumer's contract or permitted by law. It may not unilaterally change the contract's terms and conditions, including increasing the amount of principal owed by the consumer or extending the duration of the contract.

4.     In connection with its servicing of automobile finance contracts, Westlake has routinely made representations to consumers about the principal balance owed. In numerous instances, however, in connection with servicing automobile finance contracts, Westlake has misrepresented the amounts owed by consumers, including the loan's principal balance. Plaintiffs bring claims under California's Unfair Competitional Law, Cal. Bus. & Prof. Code 17200, for this unlawful practice.

5.     In addition, US Auto collected funds for the sale of Dealer Owned Warranty Company Service Agreement ("DOWC") Contracts from consumers and their lenders, but never actually purchased the service contracts from DOWC on behalf of consumers. As a result, no such service contracts are effective or in force for the thousands of consumers who paid for motor vehicle repair coverage and other protection.

6.     However, Westlake, upon information and belief as an assignee and servicer of those US Auto loan agreements, has collected, retained, and continues to

collect consumer funds for DOWC Service Contracts that were never actually purchased from DOWC. Plaintiffs, on behalf of themselves and those similarly situated, bring claims under the Truth in Lending Act, 15 U.S.C. §1601 ("TILA"), and its implementing regulations, Regulation Z, by offering a contract to Plaintiffs and others similarly situated that failed to accurately itemize the amount financed, contrary to the mandates of TILA and Regulation Z. Plaintiffs also bring common law claims.

7.     In addition, the Uniform Commercial Code ("UCC") requires secured parties who utilize self-help repossession to provide consumers with proper notice when repossessing and reselling financed consumer goods. Defendant has systematically failed to do so. The UCC allows a secured creditor to engage in "self-help" repossession of consumer goods only if it strictly adheres to the Code's consumer protections. The UCC mandates specific notice after repossession including when and where the repossessed goods will be sold and what steps a consumer can take to get his or her property back. Defendant, acting as lender's agents, has repossessed the motor vehicles of Plaintiff Danielle Caines and those similarly situated in a commercially unreasonable manner, without proper notice, in violation of the UCC and applicable state consumer protection laws.

8.     Plaintiffs are seeking actual and statutory damages, treble damages, punitive damages, injunctive relief, and attorneys' fees and costs on behalf of themselves and the putative classes.

## II. **PARTIES**

9.     Plaintiff Tamika Hueston is, and at all times mentioned herein was, an individual citizen of the State of Florida residing in the County of Alachua. Ms. Hueston purchased a 2017 Nissan Versa, VIN3N1CN7AP9HL894410 on February 20, 2023 from a U.S. Auto Sales, Inc. dealership located at 1725 N. Main Street, Gainesville, Florida 32609.

10.    Plaintiff Bundy Laney is, and at all times mentioned herein was, an individual citizen of the State of Georgia residing in Dekalb County. Mr. Laney purchased a 2017 Hyundai Sonata, VIN5NPE24AF5HH571153 April 14, 2023 from a U.S. Auto Sales, Inc. dealership located at 2086 Paul Walsh Drive, Macon, Georgia 31206.

11.    Plaintiff Cecily Moody is, and at all times mentioned herein was, an individual citizen of the State of South Carolina residing in Marion County. Ms. Shivers purchased a 2018 Chevrolet Sonic, VIN1G1JF5SB6J4138045 on June 29, 2022 from a U.S. Auto Sales, Inc. dealership located at 1448 North Cashua Drive, Florence, South Carolina, 29501.

12.    Plaintiff Jattiya Davis and was, at all relevant times here, an individual citizen of the State of North Carolina residing in Guilford County. Ms. Davis purchased a 2013 Hyundai Sonata, VIN5NPEB4AC5DH664805 on January 21, 2023 from a U.S. Auto Sales, Inc. dealership located at 1015 Glendale Drive, Apt. 3B, Greensboro, NC 27406.

13.    Plaintiff Danielle Caines is and was, at all relevant times here, an individual citizen of the State of Alabama residing in Madison County. Ms. Caines purchased a 2012 Chevrolet Equinox, VIN2GNFLEE54C6210848 on October 13, 2022 from a U.S. Auto Sales, Inc. dealership located at 2001 Sparkman Drive NW, Huntsville Alabama 35810.

14.    Defendant Westlake Portfolio Management is a California Limited Liability Companies with principal offices located at 4751 Wilshire Blvd., Suite 100, Los Angeles, CA. Upon information and belief, Defendant Westlake Portfolio Management is a citizen of the State of California.

### III.    <u>JURISDICTION AND VENUE</u>

15.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed

the sum or value of $5,000,000.00 exclusive of interest and costs, and because this a class action in which the members of the classes and Defendant are citizens of different states.

16.    This Court has personal jurisdiction over Defendant by virtue of their transactions and business conducted in this judicial district, and because Defendant are headquartered in California. Defendant has transacted and done business in the State of California and in this judicial district, and Plaintiffs bring California statutory and common law claims.

17.    Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Defendant transacts substantial business and is headquartered in this district. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## IV.    **BACKGROUND**

18.    U.S. Auto Sales, Inc. had a principal place of business at 1855 Satellite Blvd, Suite 100, Duluth, Georgia 30097. U.S. Auto Sales was a Georgia-based car dealership that operated approximately 39 locations across six states including Georgia, Florida, Tennessee, South Carolina, North Carolina, and Alabama. U.S. Auto Sales offered in-house financing through its finance arm, U.S. Auto Finance, Inc. on motor vehicles, commonly referred to as a "buy here, pay here" dealership.

19.    A "buy here, pay here" dealership is a specialized car dealership for buyers who may have a challenging time securing financing to purchase a vehicle. With a buy here, pay here dealership, a consumer can receive "in-house" financing from the dealership itself. These dealerships typically work with car buyers who might not qualify for traditional auto financing, or "subprime" borrowers. As such, it is not uncommon to see them advertised with signs such as "bad credit, no credit, no

problem."[1]

20. When financing a car with a buy here, pay here dealer, typically a consumer will not undergo a credit check as one would with a traditional auto lender. Instead, the consumer need just show that they can afford the payments on the loan. Compared to traditional auto loans, loans offered by buy here, pay here dealerships have higher interest rates.[2]

21. On April 24, 2023, US Auto suddenly, and without warning, ceased operations.[3]

### *Dealer Owned Warranty Company ("DOWC") Service Contracts*

22. At the time that US Auto ceased operations, it had collected millions of dollars from consumers and lenders through its sale of DOWC's Service Contracts. However, US Auto did not remit any monies to DOWC for the purchase of those DOWC Service Contracts. By failing to remit payment to DOWC, US Auto caused the DOWC Service Contracts to never become activated, and the coverage that consumers thought they had – and had in fact paid for – never came into effect. As a result, 20,198 DOWC Service Contracts are not "in force" despite the fact that consumers paid US Auto for coverage.

23. In other words, consumers were sold something they were never provided.

24. Effective May 22, 2023, Westlake Portfolio Management and/or Westlake, announced that the servicing of certain U.S. Auto Sales accounts would be transferred from U.S. Auto Finance to Westlake Portfolio Management.[4]

---

[1] Consumer Financial Protection Bureau, *What is a "no credit check" or "buy here, pay here" auto loan or dealership?* https://www.consumerfinance.gov/ask-cfpb/what-is-a-no-credit-check-or-buy-here-pay-here-auto-loan-or-dealership-en-887/ (last accessed February 15, 2024).

[2] *Id.*

[3] https://www.11alive.com/article/news/local/us-auto-sales-temporarily-closing-39-dealerships-across-southeast-employees-sent-home/85-e3f6b829-a201-4b9a-a215-d2506eacb4de#:~:text=US%20Auto%20Sales%20abruptly%20'temporarily,borrowers%20with%20low%20credit%20scores. (last accessed February 15, 2024).

[4] https://myaccount.wpmservicing.com/usAutoWelcome/ (last accessed February 15, 2024).

CLASS ACTION COMPLAINT

25.    At the time Westlake took the US Auto accounts, Westlake knew that the DOWC Service Contracts had not been acquired on behalf of US Auto consumers.

26.    However, Westlake has collected, retained, and continues to collect consumer funds for DOWC Service Contracts that were never purchased on their behalf, and as a result never came into effect.

27.    In doing so, Westlake has violated Federal lending and disclosure loans. Specifically, the consumer loans which Westlake took are defective consumer loans. Those defects arise from U.S. Auto's misrepresentation on the consumer's Retail Installment Sales Contracts ("RISC") in misrepresenting to consumers, in violation of the Federal Truth-in-Lending Act, that DOWC was a third-party to which payments for the vehicle service contracts were made.

28.    Westlake knew that it was collecting consumer funds for DOWC Service Agreements itemized on the RISC and that the DOWC Service Contracts were not purchased on consumers' behalf, making those consumer loans facially defective.

### *Material Alteration of Loan Terms*

29.    As a loan servicer, Westlake may only collect fees and other amounts authorized by the consumer's contract or permitted by law. It may not unilaterally change the contract's terms and conditions, including increasing the amount of principal owed by the consumer or extending the duration of the contract.

30.    In connection with its servicing of the U.S. Auto Sales finance contracts, Westlake has routinely made representations to consumers about the principal balance owed.

31.    In numerous instances in connection with servicing said automobile finance contracts, Westlake has misrepresented the amounts owed by consumers, including the loan's principal balance.

32.    Specifically, Westlake has refused to credit consumer accounts for any payments made prior to Westlake's assuming the role of servicer, effectively treating

CLASS ACTION COMPLAINT

the loan as "starting over" once Westlake stepped in. As a result, demand is being made of consumers to pay more than the principal obligation under the loan, as well as additional interest.

33.    Moreover, Westlake has misrepresented the amounts owed by consumers by disregarding payments consumers made toward the obligation prior to Westlake's role as servicer and/or assignee, and by insisting that amounts are owed for a DOWC Service Contract which Westlake knew was never secured on a consumer's behalf.

34.    Consumers who have paid or continue to pay Westlake have suffered direct financial harm because they are paying amounts not owed. Consumers who have defaulted on their loans have also been harmed, because the amount of the deficiency assessed against them is calculated in part on erroneous information and was therefore higher than it should have been.

35.    Westlake has lacked a reasonable basis for these representations to consumers because it failed to implement adequate policies and procedures to ensure the accuracy of its representations, or to ensure that it was not seeking amounts not due under the contracts with consumers. Westlake's inadequate loan servicing policies and procedures cause it to increase the principal amount owed without basis, which in turn caused improper increases in the resulting interest owed.

36.    Furthermore, Westlake's increase of the principal amount owed on consumer loans, without basis, causing an improper increase in the resulting interest owed, was unlawful.

### ***Repossession of Vehicles***

37.    The Uniform Commercial Code imposes on a secured party certain duties and obligations when the secured party retakes or repossesses consumer goods.

38.    Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms must be commercially reasonable.

39.    A security party has a duty to safeguard the collateral and to maximize

1   the proceeds of any post repossession sale of the collateral.

2       40.   Under the UCC, "[E]very aspect of a disposition of collateral … must be

3   commercially reasonable." This includes post-repossession notice.

4       41.   Under the UCC, Westlake was required to provide "reasonable

5   authenticated notification of disposition" of the collateral.

6       42.   The UCC requires a prompt post-repossession notice to the borrower and

7   any co-borrower advising of the repossession, how many days to act before public or

8   private sale of the goods, the method of intended disposition, an accounting of the

9   unpaid indebtedness, whether the borrower may be liable for a deficiency or entitled

10  to a surplus, and other information.

11      43.   Defendant Westlake has failed to provide post-repossession notice to its

12  borrowers.

13      44.   As a result of Westlake's failure to comply with the requirements of the

14  UCC, Plaintiff Caines, Davis, and the members of the Repossession Class are entitled

15  to minimum damages under the UCC.

16  ## V. <u>FACTUAL BACKGROUND</u>

17  ### *Tamika Hueston*

18      45.   Plaintiff Tamika Hueston is, and at all times mentioned herein was, an

19  individual citizen of the State of Florida residing in the County of Alachua. Ms.

20  Hueston purchased a 2017 Nissan Versa, VIN3N1CN7AP9HL894410 on February

21  20, 2023 from a U.S. Auto Sales, Inc. dealership located at 1725 N. Main Street,

22  Gainesville, Florida 32609.

23      46.   Included in the Total Cash Price of her vehicle was a fee of $1,814.00

24  for a DOWC Service Contract.

25      47.   Ms. Hueston financed the purchase of her vehicle for 148 bi-weekly

26  payments in the amount of $211.25. The APR on her purchase was 16.20%, with a

27  finance charge of $11,114.87.

28

48.     At the time of purchase, Ms. Hueston received an Itemization of Amount Financed which described that she purchased a Dealer Owned Warranty Company ("DOWC") Service Contract in the amount of $1,814.00. This Service Contract was included in the amount financed.

49.     However, a DOWC Service Contract was never secured by U.S. Auto on her behalf.

50.     Westlake was aware at the time it was assigned Ms. Hueston's RISC that a DOWC Service Contract was not secured on her behalf.

51.     Ms. Hueston remitted payment as agreed under the RISC through U.S. Auto's website payment portal until she was unable to do so because the website was no longer operative.

52.     At or around that time, Ms. Hueston saw a notification that she was to remit her payments to Westlake. However, in doing so, Ms. Hueston discovered that Westlake had failed to account for any of the payments she had previously made.

53.     Ms. Hueston verbally notified Westlake of the failure to credit her account for payments made, and was advised by Westlake to "go get a refund from U.S. Auto."

54.     Westlake continued to demand payment from Ms. Hueston in the amount set forth on the RISC.

55.     Ms. Hueston continued to pay Westlake in the bi-weekly amounts due under the RISC until approximately July 2023.

56.     In or about August 2023, Westlake took repossession of the Vehicle.

57.     Ms. Hueston contacted Westlake by telephone regarding the repossession of the Vehicle and Westlake verbally demanded $1,257.93 in exchange for return of the Vehicle.

58.     Ms. Hueston paid the demanded $1,257.93 to obtain possession of her Vehicle again.

59.    At all relevant times herein, Westlake knew that the amounts due from Ms. Hueston included an amount financed for a DOWC Service Contract that was never secured on Ms. Hueston's behalf, and was therefore not lawfully owed.

### ***Bundy Laney***

60.    Plaintiff Bundy Laney is, and at all times mentioned herein was, an individual citizen of the State of Georgia residing in Dekalb County. Mr. Laney purchased a 2017 Hyundai Sonata, VIN5NPE24AF5HH571153 April 14, 2023 from a U.S. Auto Sales, Inc. dealership located at 2086 Paul Walsh Drive, Macon, Georgia 31206.

61.    Included in the Total Cash Price of his vehicle was a fee of $3,595.00 for a Service Contract.

62.    Mr. Laney financed the purchase of his vehicle for 130 bi-weekly payments in the amount of $249.65. The APR on his purchase was 20.43%, with a finance charge of $12,482.50.

63.    At the time of purchase, Mr. Laney received an Itemization of Amount Financed which described that he purchased a DOWC Service Contract in the amount of $3,595.00. This Service Contract was included in the amount financed.

64.    However, a DOWC Service Contract was never secured by U.S. Auto on his behalf. Indeed, Mr. Laney contacted DOWC on or about July 14, 2023 and to his surprise, was advised that he does not have a DOWC Service Contract because U.S. Auto never funded the contract.

65.    Westlake was aware at the time it was assigned Mr. Laney's RISC that a DOWC Service Contract was not secured on his behalf.

66.    Mr. Laney remitted payment as agreed under the RISC to U.S. Auto and, thereafter, Westlake.

67.    At all relevant times herein, Westlake knew that the amounts due from Mr. Laney included an amount financed for a DOWC Service Contract that was never secured on Mr. Laney's behalf, and was therefore not lawfully owed.

1

***Cecily Moody***

2   68.    Plaintiff Cecily Moody is, and at all times mentioned herein was, an
3   individual citizen of the State of South Carolina residing in Marion County. Ms.
4   Shivers purchased a 2018 Chevrolet Sonic, VIN1G1JF5SB6J4138045 on June 29,
5   2022 from a U.S. Auto Sales, Inc. dealership located at 1448 North Cashua Drive,
6   Florence, South Carolina, 29501.

7   69.    Included in the Total Cash Price for her vehicle was a fee of $1,995.00
8   for a Service Contract.

9   70.    Ms. Moody financed the purchase of her vehicle for 154 bi-weekly
10  payments in the amount of $264.69. The APR on his purchase was 14.95%, with a
11  finance charge of $14,107.91.

12  71.    At the time of purchase, Ms. Moody received an Itemization of Amount
13  Financed which described that she purchased a DOWC Service Contract in the
14  amount of $1,995.00. This Service Contract was included in the amount financed.

15  72.    However, a DOWC Service Contract was never secured by U.S. Auto on
16  her behalf.

17  73.    Ms. Moody remitted payment as agreed under the RISC through U.S.
18  Auto's website payment portal until she was unable to do so because the website was
19  no longer operative.

20  74.    At or around that time, Ms. Moody saw a notification that she was to
21  remit her payments to Westlake. However, in doing so, Ms. Moody discovered that
22  Westlake had failed to account for any of the payments she had previously made.

23  75.    In or about June 2023, Ms. Moody verbally notified Westlake of the
24  failure to credit her account for payments made, and was advised by Westlake that
25  they were still in the process of "having everything transferred from U.S. Auto" and
26  that was the reason for the discrepancy, and that it would eventually be corrected.

27

28

76.    On or about July 28, 2023, Ms. Moody contacted DOWC to request service of her Vehicle. It was at that time that Ms. Moody learned that she did not have a DOWC Service Contract because U.S. Auto did not fund the contract.

77.    Approximately two months passed before Ms. Moody contacted Westlake again and inquired as to the incorrect amount due on her loan. Westlake advised that they still did not have all of the information on her account to know if it was properly credited.

78.    In or about September 2023, Ms. Moody contacted Westlake and Westlake advised her that they did not have a record or acknowledgement of any payments she had previously made on her loan.

79.    During this call, Ms. Moody requested of Westlake the opportunity to submit proof of her payments to U.S. Auto to credit her loan. She was advised, in turn, that Westlake would not accept proof of those payments and that if she had made any payments to U.S. Auto, she should dispute those amounts directly with her bank in an effort to get a refund.

80.    Westlake continues to demand payment from Ms. Moody in the amount set forth on the RISC.

81.    Ms. Moody continues to pay Westlake in the bi-weekly amounts due.

82.    At all relevant times herein, Westlake knew that the amounts due from Ms. Moody included an amount financed for a DOWC Service Contract that was never secured on Mr. Moody's behalf, and was therefore not lawfully owed.

### _Jattiya Davis_

83.    Plaintiff Jattiya Davis is and was, at all relevant times here, an individual citizen of the State of North Carolina residing in Guilford County. Ms. Davis purchased a 2013 Hyundai Sonata, VIN5NPEB4AC5DH664805 on or about January 21, 2023 from a U.S. Auto Sales, Inc. dealership located at 1015 Glendale Drive, Apt. 3B, Greensboro, NC 27406.

84. Included in the Total Cash Price of her vehicle was a fee of $3,595.00 for a Service Contract.

85. Ms. Davis financed her vehicle purchase for 144 bi-weekly payments in the amount of $242.00. The APR on her purchase was approximately 20%.

86. At the time of purchase, Ms. Davis received an Itemization of Amount Financed which described that she purchased a Dealer Owned Warranty Company ("DOWC") Service Contract in the amount of $3,595.00. This Service Contract was included in the amount financed.

87. However, a DOWC Service Contract was never secured by U.S. Auto on her behalf.

88. Westlake was aware at the time it was assigned Ms. Davis' RISC that a DOWC Service Contract was not secured on her behalf. Indeed, Westlake confirmed to Ms. Davis that it was "initially told that all warranties from US Auto were no longer valid upon boarding."

89. Ms. Davis remitted payment as agreed under the RISC directly to U.S. Auto until she was no longer able to do so. Upon transfer of her account to Westlake, Ms. Davis discovered that her account had not been credited for payments she had made. Ms. Davis brought this to Westlake's attention by filing a complaint with the Consumer Financial Protection Bureau.

90. In response to that complaint, Westlake advised that her account was reported closed by US Auto, but that the account was not paid in full. Westlake confirmed that as of August 2023, her total amount due actually higher than the initial principal balance owed, despite payments made.

91. In January 2024, Westlake repossessed her vehicle.

92. Plaintiff has not received any post-repossession notices from Westlake in connection with the repossession of her vehicle.

93.    At all relevant times herein, Westlake knew that the amounts due from Ms. Davis included an amount financed for a DOWC Service Contract that was never secured on Ms. Davis' behalf.

### *Danielle Caines*

94.    Plaintiff Danielle Caines is and was, at all relevant times here, an individual citizen of the State of Alabama residing in Madison County. Ms. Caines purchased a 2012 Chevrolet Equinox, VIN2GNFLEE54C6210848 on October 13, 2022 from a U.S. Auto Sales, Inc. dealership located at 2001 Sparkman Drive NW, Huntsville Alabama 35810.

95.    Included in the Total Cash Price of her vehicle was a fee of $3,595.00 for a Service Contract.

96.    Ms. Caines financed the purchase of her vehicle for 151 bi-weekly payments in the amount of $242.98. The APR on her purchase was 17.44%, with a finance charge of $13,994.46.

97.    At the time of purchase, Ms. Caines received an Itemization of Amount Financed which described that she purchased a Dealer Owned Warranty Company ("DOWC") Service Contract in the amount of $3,595.00. This Service Contract was included in the amount financed.

98.    However, a DOWC Service Contract was never secured by U.S. Auto on her behalf.

99.    Westlake was aware at the time it was assigned Ms. Caines' RISC that a DOWC Service Contract was not secured on her behalf.

100.    Ms. Caines remitted payment as agreed under the RISC directly to U.S. Auto through their IVR Telephone Payment System until May 2023. In or about May 2023, Ms. Caines tried to make her payment through U.S. Auto's IVR Telephone Payment System and she was automatically transferred to Westlake. Ms. Caines made her payment.

101. The next time Ms. Caines contacted U.S. Auto's IVR Telephone Payment System, she was again transferred to Westlake. This time, instead of making payment, Ms. Caines decided to contact Westlake directly to find out who they were and why she was being directed to pay them.

102. Upon being connected to Westlake, Ms. Caines was advised that Westlake was a debt collector. Ms. Caines spoke with a live representative who said that she owed approximately $21,000 – nearly the full amount of the purchase price of her vehicle. Ms. Caines asked how she could possibly owe that amount when she been making payments directly to U.S. Auto on her loan. Westlake replied that they did not have any record of any payments made to U.S. Auto and continued to insist that she pay them.

103. On October 19, 2023, Westlake repossessed her Vehicle.

104. Plaintiff has not received any post-repossession notices from Westlake in connection with the repossession of her vehicle.

105. At all relevant times herein Westlake knew that the amounts due from Ms. Caines included an amount financed for a DOWC Service Contract that was never secured on Ms. Caines' behalf, and therefore were not lawfully owed.

## VI.   ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

106. Plaintiffs and the members of the DOWC and Altered Loan Classes had no way of knowing about US Auto and Defendant Westlake's conduct concerning the failure and/or refusal to purchase DOWC Service Contracts on their behalf.

107. Neither Plaintiff nor any other members of the DOWC and Altered Loan Classes, through the exercise of reasonable care, could have discovered the conduct by Defendant alleged herein. Further, Plaintiffs and members of the DOWC and Altered Loan Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein. For these reasons, all applicable statutes of limitation have been tolled by the

discovery rule concerning claims asserted by Plaintiffs and the DOWC and Altered Loan Classes.

108.   Further, by failing to advise Plaintiffs and the members of the DOWC Class that they were or are, in fact, financing a DOWC Service Contract that was never obtained on their behalf, Defendant Westlake concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the DOWC Class Members.

109.   Moreover, by failing to advise Plaintiffs and the members of the Altered Loan Class that they were or are, in fact, not credited and will not be credited for payments made against their loan, thereby altering the principal balance due and amount financed, Defendant Westlake concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the Altered Loan Class Members.

110.   Westlake further actively concealed its conduct by collecting and attempting to collect amounts that unlawfully included amounts relating to DOWC Service Contracts, and that are not owed.

111.   Upon information and belief, Defendant intended its acts to conceal the facts and claims from Plaintiffs and Class members and intended that Plaintiffs and the Classes rely on Defendant's conduct acts of concealment. Westlake was made aware that DOWC Service Contracts were never obtained on behalf of Plaintiffs and the DOWC Class Members, but Westlake did not notify Plaintiffs and Class Members of same and continued to collect money from Plaintiffs and Class Members for the financed DOWC Service Agreements. Westlake was also aware that it was seeking to collect monies not owed from Plaintiffs and the DOWC and Altered Loan Class Members.

112.   Westlake actively misled and/or concealed from Plaintiffs and the DOWC Class Members that they were paying for a DOWC Service Contract that they did not have.

113.   Westlake actively misled and/or concealed from Plaintiffs and the

CLASS ACTION COMPLAINT

Altered Loan Class Members that they were not being credited for payments made and that therefore the principal balance and interest due on the loan was increasing.

114.    Furthermore, Plaintiffs and the members of the DOWC and Altered Loan Class exercised reasonable diligence in investigating and bringing the claims.

115.    Westlake, upon taking assignment of the RISCs, advised consumers that the servicing of their US Auto loans with Westlake would not alter or amend any of the terms of their loan agreements.

116.    Plaintiffs and the DOWC and Altered Loan Class members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or Class members should be tolled.

117.    As a factual matter, Plaintiffs did not learn that they did not have a DOWC Service Contract in place until just prior to filing suit. Once Plaintiffs, learned of it, they promptly acted to preserve her rights, filing this action. Similarly, Plaintiffs did not and could not learn that Westlake had altered the terms of their loan until Westlake took the US Auto loans. Defendant is estopped from asserting any statute of limitation defense that might otherwise apply to the claims asserted herein.

## VII.   CLASS ALLEGATIONS

118.    Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

119.    Subject to confirmation, clarification, and/or modification based on discovery to be conducted in this action, the classes that Plaintiffs seek to represent shall be defined as follows:

**Altered Loan Class:**

All individuals who had automobile loans directly with U.S. Auto Sales, Inc. that were serviced by Westlake Portfolio Management and who were not credited for payments made toward their loan.

**DOWC Class:**

All individuals who financed the purchase of a Dealer Owned Warranty Company Service Contract in connection with their purchase of a motor vehicle from a U.S. Auto Sales, Inc. dealership during the period November 1, 2021 through the present.

**Repossession Class:**

All individuals who financed a motor vehicle purchase with U.S. Auto Finance, Inc. and had the servicing of their motor vehicle transferred to Westlake Portfolio Management and subsequently had their motor vehicle repossessed during the period May 2023 through the present and were not provided with any post-repossession notices.

120. **Numerosity**: The Class members are so numerous that joinder of all members is impractical under Fed. R. Civ. P. 23(a)(1). While the exact number of Class Members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the class is ascertainable based upon the records maintained by Defendant. Upon information and belief, the DOWC Class includes 20,198 individuals. The Altered Loan and Repossession Classes are believed to each number over 40 persons and is so numerous that joinder of all members is impractical.

121. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Classes because they arise out of the same policies and practices as alleged herein, and all members of the Classes are similarly affected by Defendants' wrongful conduct. Plaintiffs and all Class Members seek identical remedies under

identical legal theories, and Plaintiffs' claims do not conflict with the interests of any other Class members in that the Plaintiffs and the other Class members were subject to the same conduct and suffered the same harm.

122. **Commonality and Predominance**: There are questions of law and fact common to the Classes, which predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

    A. Whether Plaintiffs and the members of the Altered Loan Class were not credited for payments made toward their loans;

    B. Whether Westlake's refusal to credit Plaintiffs and the members of the Altered Loan Class for payments made is a violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200;

    C. Whether Plaintiffs and the DOWC Class obtained financing for DOWC Service Contracts through US Auto;

    D. Whether Plaintiffs and the DOWC Class have DOWC Service Contracts that are in force;

    E. Whether the Westlake Defendants collected and/or retained monies from consumers' U.S. Auto finance agreements that include the purchase of DOWC Service Contracts;

    F. Whether Westlake's collection and retention of monies not owed for a DOWC Service Contract is a violation of the Truth-in-Lending Act, 15 U.S.C. §1601 *et seq*;

    G. Whether Westlake repossessed the financed motor vehicles of Plaintiffs and the Repossession Class or ordered them repossessed;

    H. Whether Westlake failed to send proper notice of disposition of collateral, as called for under the UCC;

    I. The damages provided for such misconduct;

123. **Adequacy**: Plaintiffs will fairly and adequately represent the Classes because they have no interests antagonistic to those of other Class members and the

adjudication of her claims will necessarily decide the identical issues for all other Class Members. Plaintiffs are committed to the vigorous prosecution of this action.

124. **Adequate Representation**: Plaintiffs have retained counsel competent and experienced in consumer class action litigation.

125. Plaintiffs do not anticipate any difficulty in management of this matter as a class action.

126. The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant.

127. The class members are consumer debtors who may be unable to locate or afford to hire attorneys, particularly in light of the size of any individual recovery.

128. The requirements of Rule 23(b)(1)(B) are satisfied because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

129. Class action status is also warranted under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

130. **Superiority**: If Certification is also appropriate under Rule 23(b)(3) because the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because the damages suffered by each individual Class Member are relatively modest compared to the expense and burden of individual litigation. It would be impracticable for each Class Member to seek redress individually for the wrongful conduct alleged herein. There will be no difficulty in the management of

this litigation as a class action as the legal issues affect standardized conduct by Defendant, and class actions are commonly used in such circumstances. Furthermore, since joinder of all members is impracticable, a class action will allow for an orderly and expeditious administration of the claims of the Class. It will foster economies of time, effort, and expense.

## VIII.  CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code 17200)
### *(On behalf of all Plaintiffs and the Altered Loan Class)*

131.  Plaintiffs, on behalf of themselves and the DOWC Class, hereby incorporate the allegations of Paragraphs 1 – 130 as set forth in the preceding paragraphs of the complaint as if fully set forth at length herein.

132.  The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

133.  Defendant engaged in unfair competition and unfair, unlawful or fraudulent business practices through the conduct, statements, and omissions described herein, and by knowingly and intentionally seeking to collect amounts not due from Plaintiffs and the members of the Classes. Defendant sought to collect monies for DOWC Service Contracts that it knew were not in force and that were never purchased and sought to collect monies from Plaintiffs and members of the Classes in amounts not due under their RISCs.

134.  In assuming the role of assignee and/or servicer of US Auto's loans, Defendant was required to account for all payments and credits that had previously been paid against those loans.

135.    Moreover, Defendant was required to refrain from collecting monies it knew or should have known were not owed.

136.    Defendant should have disclosed to Plaintiffs and the Class Members that monies were not owed for the DOWC Service Contracts, and disclosed to Plaintiffs and the Altered Loan Class Members that they did not owe monies which were paid but not credit to their loans, because they were in a superior position to know the true facts related to the loans, and Plaintiffs and Altered Loan Class Members could not reasonably have learned or discovered the true facts related to US Auto's failure to secure a DOWC Service Contract or to Westlake's material alteration of their loan terms to increase the principal balance due.

137.    Defendant, as a loan servicer, may only collect fees and other amounts authorized by the consumer's contract or permitted by law. It may not unilaterally change the contract's terms and conditions, including increasing the amount of principal owed by the consumer or extending the duration of the contract.

138.    In connection with its servicing of automobile finance contracts, Westlake has routinely made representations to consumers about the principal balance owed.

139.    In numerous instances in connection with servicing automobile finance contracts, Westlake has misrepresented the amounts owed by consumers, including the loan's principal balance.

140.    Specifically, Westlake has misrepresented the amounts owed by consumers by disregarding payments consumers made toward the obligation prior to Westlake's role as servicer and/or assignee, and by insisting that amounts are owed for a DOWC Service Contract which Westlake knew was never secured on a consumer's behalf.

141.    Westlake has refused to credit consumer accounts for any payments made prior to Westlake's role as servicer, effectively treating the loan as "starting

over" once Westlake stepped in. As a result, demand is being made of consumers to pay more than the principal obligation under the loan, as well as additional interest.

142.   Furthermore, Westlake has collected, retained, and continues to collect consumer funds for DOWC Service Contracts that were never purchased on their behalf, and as a result never came into effect.

143.   Plaintiffs and the Altered Loan Class Members who have paid or continue to pay Westlake have suffered direct financial harm because they are paying amounts not owed. Similarly, Plaintiffs and the Altered Loan Class Members who have defaulted on their loans have also been harmed, because the amount of the deficiency assessed against them is calculated in part on erroneous information and was higher than it should have been. Westlake has lacked a reasonable basis for these representations to consumers because it failed to adopt adequate policies and procedures to ensure the accuracy of its representations, or to ensure that it was not seeking amounts not due under the contracts with consumers. Westlake's inadequate loan servicing policies and procedures cause it to increase the principal amount owed without basis, which in turn caused improper increases in the resulting interest owed.

144.   Defendant's acts and practices have deceived Plaintiffs and the Altered Loan Class Members and are likely to deceive the public. In suppressing these material facts from Plaintiff and the Altered Loan Class Members, Defendant breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Altered Loan Class Members. Defendant's omissions and concealment pertained to information that was material to Plaintiffs and the Altered Loan Class Members, as it would have been to all reasonable consumers.

145.   The injuries suffered by Plaintiffs and the Altered Loan Class Members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Altered Loan Class Members should have reasonably avoided.

146.    Defendant's acts and practices are unlawful because they violate California Civil Code sections 1668, 1709, and 1710, *et seq*., and California Commercial Code Section 2313. Plaintiff and the other Altered Loan Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.

147.    Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated because of such practices, and all other relief allowed under California Business & Professions Code Section 17200.

## COUNT II
## BREACH OF CONTRACT
### *(On behalf of all Plaintiffs and the DOWC Class and the Altered Loan Class)*

148.    Plaintiffs, on behalf of themselves and the DOWC and Altered Loan Classes, hereby incorporate the allegations of Paragraphs 1 – 147 as set forth in the preceding paragraphs of the complaint as if fully set forth at length herein.

149.    Plaintiffs and US Auto were parties to a Retail Installment Sales Contract ("RISC") for the financing of motor vehicles.

150.    Westlake is a servicer and/or assignee of the RISC.

151.    Pursuant to the RISC, Plaintiffs and all others similarly situated purchased a DOWC Service Contract.

152.    In exchange for the coverage promised through the DOWC Service Contracts, Plaintiffs and other similarly situated were obligated to pay between at least $1,814.00 and $3,995.00 for DOWC Service Contracts.

153.    Pursuant to the RISC, Plaintiffs and all others similarly situated were obligated to make payments, and did in fact make payments, in accordance with the terms thereof.

154.    Between November 2021 and April 2023, US Auto failed to remit payment to DOWC for the DOWC Service Agreements. As a result, those DOWC

Service Contracts were never in effect, and consumers never had the protection they are paying for.

155.  Defendant Westlake breached the RISC by failing to secure the DOWC Service Contracts on behalf of Plaintiffs and those similarly situated.

156.  Defendant Westlake, as the servicer and assignee of the RISCs that is now collecting monies for the non-existent DOWC Service Contracts, is liable to Plaintiffs and the DOWC Class for damages.

157.  Pursuant to the RISC, Plaintiffs and all others similarly situated were obligated to make payments, and did in fact make payments, in accordance with the terms thereof.

158.  In turn, Defendant, as a loan servicer, may only collect fees and other amounts lawfully authorized by the RISCs of Plaintiffs and all others similarly situated.

159.  Defendant Westlake may not unilaterally change the contract's terms and conditions, including increasing the amount of principal owed by the consumer.

160.  Similarly, Defendant Westlake may not collect monies related to the non-existent DOWC Service Contracts, which Westlake knows were never provided to Plaintiffs and the Class.

161.  Defendant Westlake breached the contract of Plaintiffs and those similarly situated by increasing the amount of principal owed and, by extension, increasing the amount of interest due, by failing to properly credit Plaintiffs and those similarly situated for payments made.

162.  As a result, Defendant Westlake is liable to Plaintiffs and those similarly situated for damages.

**COUNT III (in the alternative to Count II)**
**UNJUST ENRICHMENT**
***(On behalf of all Plaintiffs and the DOWC and Altered Loan Classes)***

163.    Plaintiffs, on behalf of themselves and those members of the DOWC Class, hereby incorporate the allegations of Paragraphs 1 – 162 as set forth in the preceding paragraphs of the complaint as if fully set forth at length herein.

164.    In or around May 22, 2023, Westlake announced that it was taking over the servicing of U.S. Auto loans.

165.    The loans that Westlake is servicing includes loans in which: (1) US Auto Sales sold DOWC Service Agreements to consumers as evidenced on the RISC that US Auto Sales prepared; (2) the DOWC Service Agreements were financed as part of the loan transaction; (3) the payment was never made to DOWC for the DOWC Service Agreements and (4) the Service Agreements are not in force.

166.    Westlake's retention, through assignment and loan servicing, of consumer funds paid for DOWC Service Agreements that were never purchased from DOWC, unjustly enriches Westlake.

167.    As a result of the retention of the funds of Plaintiffs and the DOWC Class, Plaintiffs and the DOWC Class Members have been harmed.

168.    As a result of the actions by Westlake, Plaintiff and the DOWC Class Members have been damaged.

169.    Westlake's retention, through assignment and loan servicing, of consumer funds not due under the terms of the RISC, unjustly enriches.

170.    As a result of the retention of the funds of Plaintiffs and the Altered Loan Class, Plaintiffs and the members of the Altered Loan class have been harmed.

171.    As a result of the actions by Westlake, Plaintiff and the Altered Loan Class Members have been damaged.

**COUNT IV**
**VIOLATION OF THE TRUTH-IN-LENDING ACT, 15 U.S.C. §1601 *ET SEQ.***
*(On behalf of all Plaintiffs and the DOWC Class)*

172.   Plaintiffs, on behalf of themselves and the DOWC Class, hereby incorporate the allegations of Paragraphs 1 – 171 as set forth in the preceding paragraphs of the complaint as if fully set forth at length herein.

173.   The Truth in Lending Act, 15 U.S.C. §1601 ("TILA") applies to any car sale in which the amount financed is $55,800 or less, and the regulations promulgated thereunder, govern the timing, content and form of disclosures for many credit transactions.

174.   Specifically, Regulation Z, 12 C.F.R. §1026.17, requires that certain disclosures must be made by a creditor in a clear and conspicuous manner in writing.

175.   Under the Official Interpretation of Regulation Z, §1026.17(a)(1), "clear and conspicuous" generally requires that the disclosures be made in a "reasonably understandable form."

176.   Those required disclosures include the amount financed (§1026.18(b)) and the itemization of the amount financed (§1026.18(c)).

177.   Plaintiffs are "persons" as defined by 15 U.S.C. 1601(e).

178.   Defendant is a "creditor" as defined by 15 U.S.C. 1601(g). Upon information and belief, Defendant is or was at all relevant times herein an assignee of the loans held by Plaintiffs and the DOWC Class members.

179.   Here, Defendant failed to accurately disclose the itemization of the amount financed in violation of 12 C.F.R. §1026.17(a)(1) and 12 C.F.R. §1026.18(c)(1)(ii) by disclosing that Plaintiffs were financing a DOWC Service Contract when that simply was not true.

180.   Defendant's failure to accurately disclose the Itemization of Amount Financed is a violation of TILA and Regulation Z.

181.  Plaintiffs and others similarly situated suffered actual damages and monetary harm as a result of Defendant's violation of TILA, in that Plaintiffs were never made aware of the accurate financial terms of his transaction.

182.  As a result of Defendant's conduct, Plaintiffs and those similarly situated have suffered a concrete and legally cognizable injury by not receiving accurate disclosures mandated by Congress under TILA and Regulation Z. Defendant is liable to Plaintiff for statutory damages pursuant to 15 U.S.C. §1640(a).

## COUNT V
### VIOLATION OF THE UNIFORM COMMERCIAL CODE, ARTICLE 9
### *(On behalf of Plaintiffs Caines, Davis, and the Repossession Class)*

183.  Plaintiffs Caines and Davis, on behalf of themselves and the Repossession Class, hereby incorporate the allegations of Paragraphs 1 – 181 as set forth in the preceding paragraphs of the complaint as if fully set forth at length herein.

184.  The Uniform Commercial Code imposes on a secured party certain duties and obligations when the secured party retakes or repossesses consumer goods.

185.  Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms must be commercially reasonable. *See* U.C.C. § 9-610. This includes post-repossession notice.

186.  A security party has a duty to safeguard the collateral and to maximize the proceeds of any post repossession sale of the collateral.

187.  Under the UCC, Westlake was required to provide reasonable authenticated notification of disposition of the collateral. *See* U.C.C. § 9-611-614.

188.  The UCC requires a prompt post-repossession notice to the borrower and any co-borrower advising of the repossession, how many days to act before public or private sale of the goods, the method of intended disposition, an accounting of the unpaid indebtedness, whether the borrower may be liable for a deficiency or entitled to a surplus, and other information. *See* U.C.C. § 9-623.

189.  A post-repossession notification that lacks any of the information set

forth in this regard is insufficient as a matter of law.

190.   Defendant Westlake failed to provide post-repossession notices to its borrowers.

191.   As a result of Westlake's failure to comply with the requirements of the UCC, Plaintiffs and those similarly situated are entitled to damages under the UCC. Specifically, Plaintiffs and those similarly situated are entitled to actual and statutory damages in accordance with Section 9-625.

## IX.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated members of the Classes, respectfully requests that the Court enter judgment against Defendant on all claims and requests that the Court awards the following relief:

A.    An Order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives, and appointing the undersigned to act as Class Counsel;

B.    Awarding actual, consequential, punitive, and statutory damages;

C.    Awarding applicable pre-judgment and post-judgment interest on any amounts awarded to Plaintiffs and the Classes pursuant to law;

D.    For disgorgement and restitution to Plaintiff and the Class and/or Sub-class members of all monies received or collected from Plaintiff and the Class and/or Sub-class members and all other forms of equitable relief;

E.    An award of Plaintiff's attorneys' fees, expenses, and taxable costs, as provided by the common fund doctrine, 15 U.S.C. §1640(a)(3), and all applicable law;

F.    For actual and statutory damages under the UCC at § 9-625;

G.    Any other relief the Court determines is just and proper.

## X. **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all triable issues.

1

2   DATED: February 16, 2024            Respectfully submitted,

3

4                                       /s/Kyle D. McLean
                                        Kyle McLean (SBN 330580)
5                                       kmclean@sirillp.com
                                        Lisa R. Considine (*pro hac vice* to be filed)
6                                       lconsidine@sirillp.com
7                                       **SIRI & GLIMSTAD LLP**
                                        700 S. Flower Street, Suite 1000
8                                       Los Angeles, CA 90017
                                        Main: 213-376-3739
9

10                                      *Attorneys for Plaintiffs and the putative classes*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT