1  Katalina Baumann (SBN 278606)
2  katalina.baumann@troutman.com
   **TROUTMAN PEPPER**
3  **HAMILTON SANDERS LLP**
4  5 Park Plaza, Suite 1400
   Irvine, CA 92614
5  Telephone: (949) 622.2700
6  Facsimile: (949) 622.2739

7  Attorneys for Defendant
8  Westlake Portfolio Management, LLC

9

10

11              **UNITED STATES DISTRICT COURT**

12             **CENTRAL DISTRICT OF CALIFORNIA**

13  TAMIKA HUESTON, BUNDY            Case No. 5:24-cv-00380-JGB-SHK
14  LANEY, CECILY MOODY, JATTIYA
    DAVIS, and DANIELLE CAINES on    **NOTICE OF MOTION AND**
15  behalf of themselves and all others  **MOTION OF DEFENDANT**
16  similarly situated,              **WESTLAKE PORTFOLIO**
                                     **MANAGEMENT, LLC TO COMPEL**
17              Plaintiffs,          **ARBITRATION; MEMORANDUM**
                                     **OF POINTS AND AUTHORITIES**
18  v.
                                     [Declarations of John Schwartz and
19                                   [Proposed] Order lodged concurrently]
20  WESTLAKE PORTFOLIO
    MANAGEMENT, LLC,                 Date:           June 03, 2024
21                                   Time:           9:00 A.M.
                Defendant.           Courtroom:      1
22                                   Location:       3470 Twelfth Street,
23                                                   Riverside, CA 92501
24                                   Judge:          Hon. Jesus G. Bernal
                                     Complaint filed: February 6, 2024
25

26

27

28

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 03, 2024, at 9:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Jesus G. Bernal in Courtroom 1 of the United States District Court for the Central District of California, located at 3470 Twelfth Street Riverside, CA 92501-3801, Westlake Portfolio Management, LLC ("WPM"), will move for an order: (1) compelling Plaintiffs Tamika Hueston, Bundy Laney, Cecily Moody, Jattiya Davis, and Danielle Caines to arbitrate their claims on an individual basis; and (2) dismissing or staying this action pending completion of the arbitration proceedings.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of John Schwartz and exhibits thereto, all papers and pleadings on file in this action, and any further evidence and argument presented to the Court in connection with this Motion.

WPM makes this motion following a conference pursuant to Local Rule 7-3, which took place on April 15, 2024.

Dated:    April 22, 2024                **TROUTMAN PEPPER HAMILTON SANDERS LLP**

By: */s/ Katalina Baumann*
Katalina Baumann

Attorneys for Defendant
Westlake Portfolio Management, LLC

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

    A.    Hueston's Account. ......................................................................... 2

    B.    Laney's Account. ............................................................................ 3

    C.    Moody's Account. ........................................................................... 4

    D.    Davis's Account. ............................................................................. 4

    E.    Caines's Account. ........................................................................... 5

    F.    The Arbitration Agreements and Class Action Waiver. ................. 6

III.  ARGUMENT ........................................................................................... 7

    A.    Plaintiffs Must Arbitrate Their Claims. .......................................... 7

    B.    The Arbitration Agreements Are Valid and Enforceable. ............... 8

        1.    Hueston Agreed to Arbitrate Her Claims on an Individual Basis. ............................................................. 9

        2.    Laney Agreed to Arbitrate His Claims on an Individual Basis. ........................................................... 10

        3.    Moody Agreed to Arbitrate Her Claims on an Individual Basis. ........................................................... 11

        4.    Davis Agreed to Arbitrate Her Claims on an Individual Basis. ........................................................... 12

        5.    Caines Agreed to Arbitrate Her Claims on an Individual Basis. ........................................................... 13

        6.    Westlake Is Entitled to Enforce the Arbitration Agreements. .......................................................... 14

    C.    Plaintiffs' Claims Fall Within the Arbitration Agreements' Broad Scope. ........................................................... 18

    D.    Any Questions Relating to the Interpretation and Scope of the Arbitration Agreements Are for the Arbitrator. .............. 19

    E.    The Action Must Be Dismissed or Stayed Pending Arbitration. ................................................................. 21

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

Case No. 5:24-cv-00380-JGB-SHK

MOTION TO COMPEL ARBITRATION

IV.    CONCLUSION ............................................................................................22

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

MOTION TO COMPEL ARBITRATION

1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliff v. Vervent, Inc.*,
   No. 20-cv-00697-DMS-AHG, 2020 WL 5709197 (S.D. Cal. 2020)...........16, 17

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
   513 U.S. 265 (1995) ................................................................................................7

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ...........................................................................................1, 8

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ......................................................................................1, 7, 8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ..............................................................................18, 19, 21

*Balar Equip. Corp. v. VT Leeboy, Inc.*,
   336 F. App'x 688 (9th Cir. 2009)......................................................................21

*Beasenburg v. Ultragenyz Pharm. Inc.*,
   No. 2:22-cv-04022-BHH-JDA, 2023 WL 6638971 (D.S.C. 2023) ...................11

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015)...........................................................................19

*Brookdale Senior Living Inc. v. Weir*,
   No. 3:20CV293-GCM, 2021 WL 3464966 (W.D.N.C. 2021)............................20

*Brown v. Family Dollar Stores of N.C., Inc.*,
   No. 1:12CV977, 2022 WL 3576972 (M.D.N.C. 2022) ......................................12

*Capriole v. Uber Techs., Inc.*,
   7 F.4th 854 (9th Cir. 2021)..................................................................................8

*Carusone v. Nintendo of Am., Inc.*,
   No. 5:19-cv-01183-LCB, 2020 WL 3545468 (N.D. Ala. 2020).................13, 14

*Chambers v. Groome Transp. of Ala.*,
   41 F. Supp. 1327 (M.D. Ala. 2014)....................................................................20

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ............................................................... 8

*Collins v. Burlington N. R. Co.*,
  867 F.2d 542 (9th Cir. 1989) .............................................................. 21

*CompuCredit Corp. v. Greenwood*,
  565 U.S. 95 (2012) ...................................................................... 1, 8

*CPR-Cell Phone Repair Franchise Systems, Inc. v. Nayrami*,
  896 F. Supp. 2d 1233 (N.D. Ga. 2012) .............................................. 20

*Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*,
  952 F.2d 1073 (9th Cir. 1991) ............................................................ 18

*Dillard v. Dolgen Corp. LLC.*,
  No. 1:17CV112, 2017 WL 5197882 (M.D.N.C. 2017) ............................ 12, 13

*Donnelly v. Linden Cap. Partners III, L.P.*,
  506 F. Supp. 3d 354 (D.S.C. 2020) .................................................... 11

*Dunn v. Global Trust Mgmt., LLC*,
  506 F. Supp. 3d 1214 (M.D. Fla. 2020) .............................................. 20

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ................................................................. 1, 8

*Ferguson v. Corinthian Colls., Inc.*,
  733 F.3d 928 (9th Cir. 2013) ............................................................ 18

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ..................................................................... 8, 11

*Given v. M & T Bank Corp. (In re Checking Account Overdraft Litig.)*,
  674 F.3d 1252 (11th Cir. 2012) .......................................................... 20

*Green Tree Fin. Corp. Ala. v. Randolph*,
  531 U.S. 79 (2000) ....................................................................... 8

*Holmes v. Credit Acceptance Corp.*,
  No. 5:20-cv-0613-LCB, 2021 WL 942080 (N.D. Ala. 2021) ...................... 13, 14

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

*Hopper v. Gen. Elec. Co.*,
   No. 1:18 CV 128, 2018 WL 5269850 (W.D.N.C. 2018) ................................. 13

*Jackson v. 14856 Magnolia Blvd. Real Estate LLC*,
   No. CV 19-10898 FMO (Ex), 2020 WL 4342259 (C.D. Cal. 2020) ................ 18

*Jackson v. Cintas Corp.*,
   425 F.3d 1313 (11th Cir. 2005) ........................................................................ 11

*Junious v. Midtowne Fin.*,
   No. 5:21-cv-00069-HNJ, 2021 WL 5216882 (N.D. Ala. 2021) ....................... 13

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011) ............................................................................................. 8

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ....................................................................................... 1

*Marmet Health Care Ctr., Inc. v. Brown*,
   565 U.S. 530 (2012) ....................................................................................... 1, 8

*Mattson v. WTS Int'l, Inc.*,
   No. 8:20-cv-1245-CEH-AEP, 2021 WL 1060211 (M.D. Fla. 2021)............... 10

*McBride v. Gamestop, Inc.*,
   No. 1:10-cv-2376-RWS, 2011 WL 578821 (N.D. Ga. 2011) ..................... 10, 11

*Medina v. Circle K. Stores, Inc.*,
   No. EDCV 22-0557 ........................................................................................... 21

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ..................................................................................... 8, 18

*Palmer v. Johns Island Post Acute, LLC*,
   No. 2:22-3432-RMG-KDW, 2023 WL 4409038 (D.S.C. 2023) ..................... 12

*Pleasant v. Dollar Gen. Corp.*,
   No. EDCV 14-02645 .......................................................................................... 21

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ............................................................................................ 7

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ..................................................................................... 19, 21

*Rutledge v. Santander Consumer USA Inc.*,
   No. 6:20-cv-04214-DCC, 2021 WL 2949860 (D.S.C. 2021) ............................ 20

*Shearson/Am. Express Inc. v. McMahon*,
   482 U.S. 220 (1987) .............................................................................................. 8

*Sides v. Macon Cnty. Greyhound Park, Inc.*,
   No. 3:10-cv-895-MEF, 2011 WL 2728926 (M.D. Ala. 2011) ........................... 14

*Simula, Inc. v. Autoliv Inc.*,
   175 F.3d 716 (9th Cir. 1999) ............................................................................. 18

*Sovak v. Chugai Pharm. Co.*,
   280 F.3d 1266 (9th Cir. 2002) ............................................................................. 9

*Sundial Partners, Inc. v. Atl. St. Capital. Mgmt. LLC*,
   No. 8:15-cv-861, 2016 WL 943981 (M.D. Fla. 2016) ......................................... 9

*Tuttle v. Credit Acceptance Corp.*,
   No. 8:18-cv-2182-T-23JSS, 2018 WL 6621374 (M.D. Fla. 2018) ............... 9, 10

*Vargas-Ramos v. Specialized Loan Servicing LLC*,
   No. CV 22-05443-MWF, 2022 WL 18397505 (C.D. Cal. 2022) ...................... 17

*Wagoner v. Am. Fam. Life Assur. Co. of Columbus*,
   No.1:08CV394, 2009 WL 1405524 (M.D.N.C. 2009) ...................................... 12

*Williams v. Cash Am.*,
   No. 6:18-405-TMC-KFM, 2018 WL 6535113 (D.S.C. 2018) .......................... 12

*Wilson v. O'Charley's, LLC*,
   No. 1:14-cv-1983-TWT, 2014 WL 5716295 (N.D. Ga. 2014) ......................... 11

**Statutes**

9 U.S.C. § 2 ............................................................................................................. 1, 7

9 U.S.C. § 3 ................................................................................................................ 21

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court should compel arbitration—on an individual basis—of the claims that Tamika Hueston, Bundy Laney, Cecily Moody, Jattiya Davis, and Danielle Caines ("Plaintiffs") asserted against Westlake Portfolio Management, LLC ("WPM"), which all relate to Plaintiffs' accounts (the "Accounts") with WPM. Although the claims fail on the merits, this Court is not the proper forum for that determination.  Instead, the claims must be resolved through individual arbitration pursuant to arbitration agreements (the "Arbitration Agreements") incorporated into the purchase agreements and retail installment sales contracts ("RISC") governing each Account.  By their terms, the Arbitration Agreements broadly encompass "[a]ny claim or dispute, whether in contract, tort or otherwise (including the interpretation and scope of this clause and the arbitrability of any issue)" between Plaintiffs and WPM "which arises out of or relates in any manner to the purchase, financing, or lease of [Plaintiffs'] vehicle[s] or any resulting transaction or relationship (including any such relationship with third parties who do not sign th[e] Arbitration Agreement . . . )."  Under the Federal Arbitration Act ("FAA") a binding arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Consistent with the FAA, the United States Supreme Court has consistently confirmed that agreements to arbitrate are fully enforceable as written.  *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1414 (2019); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232-34 (2013); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532 (2012); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97-98 (2012); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011).  Accordingly, the Court should grant the Motion and, if Plaintiffs intend to pursue their claims against WPM: (1) direct

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

Plaintiffs to arbitrate the claims on an individual basis; and (2) dismiss or stay this action pending completion of arbitration.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Hueston's Account.

On or about February 20, 2023, Tamika Hueston ("Hueston") entered into a purchase agreement and a RISC with U.S. Auto Sales, Inc. ("U.S. Auto Sales") in connection with the financing of her purchase of a 2017 Nissan Versa, VIN 3N1CN7AP9HL894410 (the "Hueston Account").  Declaration of John Schwartz ("Schwartz Decl.") ¶ 5.  Pursuant to this purchase agreement, Hueston expressly "acknowledge[d] that [Hueston] and [U.S. Auto Sales] have signed a separate arbitration agreement.  That agreement [was t]hereby attached and the terms are incorporated into the terms of [the purchase agreement.]" *Id.*



In addition, the purchase agreement informed Hueston that "[i]f [she was] buying the Vehicle in a credit sale transaction with [U.S. Auto Sales] evidenced by a signed retail installment sales contract, [the purchase agreement] becomes binding when [she] sign[ed] it and the retail installment sales contract." *Id.* at 3.

Hueston also executed a RISC in connection with the financing of her vehicle purchase.  *Id.* ¶ 7.  As with the purchase agreement, the RISC also required Hueston to expressly "acknowledge that [she] and [U.S. Auto Sales] have signed a separate arbitration agreement.  That agreement [was t]hereby attached and the terms incorporated into the terms of [the RISC.]" *Id.* at 7.  The RISC was then assigned to

U.S. Auto Finance, Inc. ("U.S. Auto Finance") on the same day that Hueston purchased the vehicle. *Id.* at 9.



As Hueston acknowledged in both documents referenced above, she also executed a separate Arbitration Agreement, which was then incorporated into the terms of the purchase agreement and RISC. *Id.* ¶ 6, 9, 11. The RISC further provides that the Hueston Account is governed by federal and Florida law, *id.* ¶ 7, and the Arbitration Agreement is governed by the FAA. *Id.* ¶ 42.

**B.    Laney's Account.**

On or about April 14, 2023, Bundy Laney ("Laney") entered into a purchase agreement with U.S. Auto Sales in connection with the financing of his purchase of a 2017 Hyundai Sonata, VIN 5NPE24AF5HH571153 (the "Laney Account"). *Id.* ¶ 12. As with Hueston, Laney also expressly "acknowledge[d] that [Laney] and [U.S. Auto Sales] have signed a separate arbitration agreement. That agreement [was t]hereby attached and the terms are incorporated into the terms of [the purchase agreement.]" *Id.* ¶ 13.

Laney also executed a RISC in connection with the financing of her vehicle purchase. *Id.* ¶ 14. Again, as with Hueston, Laney expressly acknowledged for a second time that he and U.S. Auto Sales signed a separate arbitration agreement in connection with the RISC. *Id.* ¶ 16. The RISC was then assigned to U.S. Auto Finance on the same day that Laney purchased the subject vehicle. *Id.* ¶ 17.

Case No. 5:24-cv-00380-JGB-SHK
MOTION TO COMPEL ARBITRATION

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

Pursuant to the documents above, the Laney Account is subject to a separate Arbitration Agreement executed contemporaneously with the purchase agreement and RISC.  *Id.* ¶ 13, 16, 18.  The RISC further provides that the Laney Account is governed by federal and Georgia law, *id.* ¶ 15, and the Arbitration Agreement is governed by the FAA.  *Id.* ¶ 42.

**C.    Moody's Account.**

On or about June 29, 2022, Cecily Moody ("Moody") entered into a purchase agreement with U.S. Auto Sales in connection with the financing of her purchase of a 2018 Chevrolet Sonic, VIN 1G1JF5SB6J4138045 (the "Moody Account").  *Id.* ¶ 19.  As with the other plaintiffs, Moody also expressly "acknowledge[d] that [Moody] and [U.S. Auto Sales] have signed a separate arbitration agreement.  That agreement [was t]hereby attached and the terms are incorporated into the terms of [the purchase agreement.]"  *Id.* ¶ 20.

Moody also executed a RISC in connection with the financing of her vehicle purchase.  *Id.* ¶ 21.  And again, Moody expressly acknowledged for a second time that she and U.S. Auto Sales signed a separate arbitration agreement in connection with the RISC.  *Id.* ¶ 23.  The RISC was then assigned to U.S. Auto Finance on the same day that Moody purchased the subject vehicle.  *Id.* ¶ 24.

Like the others, the Moody Account is subject to a separate Arbitration Agreement executed by Moody contemporaneously with the purchase agreement and RISC.  *Id.* ¶ 20, 23, 25.  The RISC further provides that the Moody Account is governed by federal and South Carolina law, *id.* ¶ 21, and the Arbitration Agreement is governed by the FAA.  *Id.* ¶ 42.

**D.    Davis's Account.**

On or about January 13, 2023, Jattiya Davis ("Davis") entered into a purchase agreement with U.S. Auto Sales in connection with the financing of her purchase of a 2013 Hyundai Sonata, VIN 5NPEB4AC5DH663805 (the "Davis Account").  *Id.* ¶ 26.  Like the other plaintiffs, Davis also expressly "acknowledge[d] that [Davis]

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

and [U.S. Auto Sales] have signed a separate arbitration agreement. That agreement [was t]hereby attached and the terms are incorporated into the terms of [the purchase agreement.]" *Id.* ¶ 27.

Davis also executed a RISC in connection with the financing of her vehicle purchase. *Id.* ¶ 28. As with the other plaintiffs, Davis expressly acknowledged for a second time that she and U.S. Auto Sales signed a separate arbitration agreement in connection with the RISC. *Id.* ¶ 30. The RISC was then assigned to U.S. Auto Finance on the same day that Davis purchased the subject vehicle. *Id.* ¶ 31.

Again, the Davis Account is subject to a separate Arbitration Agreement executed by Davis contemporaneously with the purchase agreement and RISC. *Id.* ¶ 27, 30, 32. The RISC further provides that the Davis Account is governed by federal and North Carolina law, *id.* ¶ 29, and the Arbitration Agreement is governed by the FAA. *Id.* ¶ 42.

**E.    Caines's Account.**

Finally, on or about October 13, 2022, Danielle Caines ("Caines") entered into a purchase agreement with U.S. Auto Sales in connection with the financing of her purchase of a 2012 Chevrolet Equinox, VIN 2GNFLEE54C6210848 (the "Caines Account"). *Id.* ¶ 33. As with the plaintiffs above, Caines also expressly "acknowledge[d] that [Caines] and [U.S. Auto Sales] have signed a separate arbitration agreement. That agreement [was t]hereby attached and the terms are incorporated into the terms of [the purchase agreement.]" *Id.* ¶ 34.

Caines also executed a RISC in connection with the financing of her vehicle purchase. *Id.* ¶ 35. Caines expressly acknowledged for a second time that she and U.S. Auto Sales signed a separate arbitration agreement in connection with the RISC. *Id.* ¶ 37. The RISC was then assigned to U.S. Auto Finance on the same day that Caines purchased the subject vehicle. *Id.* ¶ 38.

Pursuant to the purchase agreement and RISC, the Caines Account is subject to a separate Arbitration Agreement executed by Caines contemporaneously with the

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

MOTION TO COMPEL ARBITRATION

purchase agreement and RISC.  *Id.* ¶ 34, 37, 39.  The RISC further provides that the Caines Account is governed by federal and Alabama law, *id.* ¶ 36, and the Arbitration Agreement is governed by the FAA.  *Id.* ¶ 42.

**F.    The Arbitration Agreements and Class Action Waiver.**

The Arbitration Agreements that each Plaintiff executed state, in pertinent part, that either party to a claim or dispute may elect mandatory binding arbitration as follows.  They also include a binding class action waiver.

**ARBITRATION AGREEMENT**

**This Arbitration Agreement significantly affects your rights in any dispute with us.  Please read this Arbitration Agreement carefully before you sign it.**

**1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT.**

**2. IF A DISPUTE IS ARBITRATED, YOU AND WE WILL EACH GIVE UP OUR RIGHT TO A TRIAL BY THE COURT OR A JURY TRIAL.**

**3. <u>IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US.</u>**

. . .

Any claim or dispute, whether in contract, tort or otherwise (including the interpretation and scope of this clause and the arbitrability of any issue), between you and us or our employees, agents, successors or assigned, which arises out of or relates in any manner to the purchase, financing, or lease of your vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Arbitration Agreement, such as an assignee of the Contract or Lease Agreement) shall, at your or our election (or the election of any such third party), be resolved by neutral, binding arbitration and not by a court action.  Any claim or dispute is to be arbitrated on an individual basis and not as a class action.  **You expressly waive any right you**

**may have to arbitrate a class action.  This is called the "class action waiver."**

*Id.* ¶¶ 40–41, Exs. 3, 6, 9, 12, and 15 at 1 (emphasis in original).

## III.    ARGUMENT

### A.    Plaintiffs Must Arbitrate Their Claims.

Section 2 of the FAA mandates that a binding arbitration agreement in a contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).[1]

The United States Supreme Court has repeatedly and consistently confirmed that the FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of discretion by a district court, but instead mandates

---

[1]    The Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g.*, *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).  Here, there is no question that the transactions at issue involve interstate commerce, and that the FAA applies, because the dispute at issue is between Plaintiffs, who reside in and are citizens of states *other than* California, *see* Compl. ¶¶ 9–13, and WPM, which is a servicer with a principal place of business located in Los Angeles, California. *See id.* ¶ 14; *see also* Schwartz Decl. ¶ 1.  Moreover, the Arbitration Agreements contain a choice of law provision under which the parties agreed to the application of the FAA. Schwartz Decl., Exs. 3, 6, 9, 12, 15 at 2 ("This Arbitration Agreement relates to an agreement that evidences a transaction involving interstate commerce.  Any arbitration under this Arbitration Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 *et. seq.*) [sic].").

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21–22 (2011) (citations omitted; emphasis in original). As the Supreme Court has confirmed on multiple occasions, the FAA strongly favors the validity and enforceability of arbitration agreements; and courts should steadfastly enforce those agreements. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Marmet Health Care Ctr., Inc.*, 565 U.S. at 532; *CompuCredit Corp.*, 565 U.S. at 98; *Concepcion*, 563 U.S. at 336. The Ninth Circuit has similarly stressed that courts should enforce arbitration agreements according to their terms. *See Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 861 (9th Cir. 2021) ("[T]he FAA . . . 'places arbitration agreements on an equal footing with other contracts, requiring courts to enforce them according to their terms.'") (quoting *In re Grice*, 974 F.3d 950, 953 (9th Cir. 2020)).

When addressing motions to compel arbitration, courts look to whether: (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claims at issue. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). And when conducting that analysis, an arbitration agreement that is governed by the FAA is presumed to be valid and enforceable. *See Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–27 (1985). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

Here, the Arbitration Agreements are valid, WPM can enforce their terms, and Plaintiffs' claims are within the agreements' scope. Accordingly, the Court should enforce the Arbitration Agreements as written.

## B.    The Arbitration Agreements Are Valid and Enforceable.

Although the FAA governs the enforceability of the Arbitration Agreements, state law governs whether a valid agreement to arbitrate exists. *See First Options of*

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (holding that, where the underlying agreement provided for the application of Illinois law, "we must conclude that the Agreement incorporates the FAA's rules for arbitration, but Illinois substantive law applies in all other respects").

In this case, in addition to the FAA, each of Plaintiffs' accounts is governed by a different state's law. The Hueston Account is governed by Florida law. *See, supra*, Section II.A. The Laney Account is governed by Georgia law. *See, supra*, Section II.B. The Moody Account is governed by South Carolina law. *See, supra*, Section II.C. The Davis Account is governed by North Carolina law. *See, supra*, Section II.D. And the Caines Account is governed by Alabama law. *See, supra*, Section II.E. Accordingly, the Court must analyze each Arbitration Agreement under the laws of the appropriate state. *See Sovak*, 280 F.3d at 1270.

**1.    Hueston Agreed to Arbitrate Her Claims on an Individual Basis.**

Under Florida law, "[t]he question of whether a valid agreement to arbitrate exists is a question of contract formation." *Sundial Partners, Inc. v. Atl. St. Capital. Mgmt. LLC*, No. 8:15-cv-861, 2016 WL 943981, at *4 (M.D. Fla. 2016) (citing *Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 398 (Fla. 2005)). To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove the following elements: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Id.* (citing *Kolodziej v. Mason*, 774 F.3d 736, 704–41 (11th Cir. 2014)).

An arbitration agreement represents an offer to submit claims to arbitration. *See Tuttle v. Credit Acceptance Corp.*, No. 8:18-cv-2182-T-23JSS, 2018 WL 6621374, at *2 (M.D. Fla. 2018) ("The arbitration agreement in this case represented Defendant's offer to submit any claim arising out of the RIC to arbitration.").

Execution of an arbitration agreement constitutes an acceptance of an offer to submit claims to arbitration. *See id.* ("Plaintiff accepted this offer by electronically signing and initialing the RIC and separately electronically initialing the arbitration clause."). A mutual waiver of rights to litigate in favor of arbitration constitutes consideration. *Id.* ("[T]here is consideration for the agreement in that the parties mutually waived their right to suit in favor of arbitration.").  An agreement to arbitrate contains sufficient specification of its essential terms where the agreement details that the parties are agreeing to submit certain disputes to arbitration; where the agreement explains the types of disputes that fall within the agreement's scope; and where the agreement advises that utilizing arbitration to resolve disputes covered by the agreement results in the parties giving up any right that they may have to a jury trial. *See Mattson v. WTS Int'l, Inc.*, No. 8:20-cv-1245-CEH-AEP, 2021 WL 1060211, at *7 (M.D. Fla. 2021).

Here, in connection with her purchase and financing of a vehicle from U.S. Auto Sales, U.S. Auto Sales included as a proposed term regarding arbitration. *See* Schwartz Decl. ¶ 11, Ex. 3 at 2.  Hueston accepted by executing the Arbitration Agreement, the purchase agreement, and the RISC. *See id.*, Ex. 3 at 2.  The agreement to arbitrate claims constitutes sufficient consideration to form a contract under Florida law. *See Tuttle*, 2018 WL 6621374, at *2.  Further, the Arbitration Agreement details that the parties are agreeing to submit disputes to arbitration; explains the types of disputes that fall within the agreement's scope; and advises that utilizing arbitration to resolve disputes results in the parties giving up any right they may have to a jury trial.  This constitutes sufficient specification of the essential terms of the agreement to arbitrate. *See Mattson*, 2021 WL 1060211, at *7.  Accordingly, Hueston entered into a valid, enforceable agreement to arbitrate her claims.

## 2.    Laney Agreed to Arbitrate His Claims on an Individual Basis.

Under Georgia law, to determine whether a valid and enforceable agreement to arbitrate exists, Georgia contract law governs. *See McBride v. Gamestop, Inc.*,

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

No. 1:10-cv-2376-RWS, 2011 WL 578821, at *2 (N.D. Ga. 2011). "Under Georgia contract law, '[a] definite offer and complete acceptance, for consideration, create a binding contract.'" *Id.* (quoting *Moreno v. Strickland*, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002)).

An arbitration agreement represents an offer to submit claims to arbitration. *See Wilson v. O'Charley's, LLC*, No. 1:14-cv-1983-TWT, 2014 WL 5716295, at *2 (N.D. Ga. 2014) ("The arbitration agreement in this case clearly represented Defendant's offer to submit to arbitration any Title VII or tort claims Plaintiff may have against Defendant, which Plaintiff accepted by signing electronically."). The execution of an arbitration agreement represents acceptance of the agreement. *Id.* "Under Georgia law, a mutual exchange of promises constitutes adequate consideration" to form a contract. *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1318 (11th Cir. 2005).

Here, U.S. Auto Sales made an offer to Laney to submit claims to arbitration. *See* Schwartz Decl. ¶ 18, Ex. 6 at 2. Laney accepted this offer by executing the Arbitration Agreement. *See id.*, Ex. 6 at 2. The agreement to arbitrate claims constitutes sufficient consideration to form a contract under Georgia law. *See Jackson*, 425 F.3d at 1318. Accordingly, Laney entered into a valid, enforceable agreement to arbitrate.

**3.    Moody Agreed to Arbitrate Her Claims on an Individual Basis.**

Under South Carolina law, "[w]hether the parties agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Donnelly v. Linden Cap. Partners III, L.P.*, 506 F. Supp. 3d 354, 357 (D.S.C. 2020) (citing *First Options of Chicago, Inc.*, 514 U.S. at 944). "In South Carolina, the formation of a valid contract requires 1) an offer, 2) acceptance of the offer, and 3) valid consideration." *Beasenburg v. Ultragenyz Pharm. Inc.*, No. 2:22-cv-04022-BHH-JDA, 2023 WL 6638971, at *7 (D.S.C. 2023) (quoting *Swanson v. Pro. Serv. Indus., Inc.*, No. 2:11-cv-2880-RMG-BM, 2012 WL 1130664, at *3 (D.S.C. 2012)).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

Case No. 5:24-cv-00380-JGB-SHK
MOTION TO COMPEL ARBITRATION

An arbitration agreement constitutes an offer to participate in arbitration. *See Palmer v. Johns Island Post Acute, LLC*, No. 2:22-3432-RMG-KDW, 2023 WL 4409038, at *6 (D.S.C. 2023) ("As noted by Defendant, the Arbitration Agreement itself is an offer to Plaintiff to participate in arbitration."). The execution of an agreement evidences acceptance of the terms of the agreement. *See id*. at *3 ("Plaintiff hand-signed the letter on March 22, 2021, indicating he was accepting the offer."). "[M]utual promises to arbitrate . . . have been recognized as valid consideration for arbitration agreements." *Williams v. Cash Am.*, No. 6:18-405-TMC-KFM, 2018 WL 6535113, at *5 (D.S.C. 2018) (citing *Towles v. United HealthCare Corp.*, 524 S.E.2d 839, 845 (S.C. Ct. App. 1999)).

Here, U.S. Auto Sales made an offer to Moody to submit claims to arbitration. *See* Schwartz Decl. ¶ 25, Ex. 9 at 2. Moody accepted this offer by executing the Arbitration Agreement. *See id.*, Ex. 9 at 2. The agreement to arbitrate claims constitutes sufficient consideration to form a contract under South Carolina law. *See Williams*, 2018 WL 6535113, at *5. Accordingly, Moody entered into a valid, enforceable agreement to arbitrate.

**4.    Davis Agreed to Arbitrate Her Claims on an Individual Basis.**

Under North Carolina law, "[t]o determine whether the parties have agreed to arbitrate, [a court] must apply state law principles governing contract formation." *Brown v. Family Dollar Stores of N.C., Inc.*, No. 1:12CV977, 2022 WL 3576972, at *2 (M.D.N.C. 2022) (citing *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001)). A valid contract requires offer, acceptance, consideration, mutual assent, and the presence of no valid defenses for contract formation. *Wagoner v. Am. Fam. Life Assur. Co. of Columbus*, No.1:08CV394, 2009 WL 1405524, at *5 (M.D.N.C. 2009) (citing *Copy Prods., Inc. v. Randolph*, 303 S.E.2d 87, 88 (N.C. Ct. App. 1983); *Snyder v. Freeman*, 266 S.E.2d 593, 602 (N.C. 1980)).

An arbitration agreement constitutes an offer to participate in arbitration. *See Dillard v. Dolgen Corp. LLC.*, No. 1:17CV112, 2017 WL 5197882, at *3 (M.D.N.C.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

MOTION TO COMPEL ARBITRATION

2017) ("The acknowledged Arbitration Agreement clearly satisfies the requisite offer, acceptance, and consideration to form a contract under North Carolina contract law."). The execution of an agreement evidences acceptance of the terms of the agreement. *See id.* ("[T]he Arbitration Agreement itself reflects that Plaintiff expressly agreed to the Arbitration Agreement and attached his electronic signature."). An agreement to resolve claims, disputes, or controversies through binding arbitration constitutes valuable consideration. *See Hopper v. Gen. Elec. Co.*, No. 1:18 CV 128, 2018 WL 5269850, at *4 (W.D.N.C. 2018) ("In the instant case, Defendant provided valuable consideration to Plaintiff by agreeing to resolve covered claims, disputes, and controversies through binding arbitration.") (citing *Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879, 881 (N.C. Ct. App. 1999)).

Here, U.S. Auto Sales made an offer to Davis to submit claims to arbitration. *See* Schwartz Decl. ¶ 32, Ex. 12 at 2. Davis accepted this offer by virtue of her execution of the Arbitration Agreement. *See id.*, Ex. 12 at 2. The agreement to arbitrate claims constitutes sufficient consideration to form a contract under North Carolina law. *See Hopper*, 2018 WL 5269850, at *4. Accordingly, Davis entered into a valid, enforceable agreement to arbitrate.

### 5. Caines Agreed to Arbitrate Her Claims on an Individual Basis.

"In Alabama, courts apply 'general state-law contract principles' to determine whether a valid arbitration agreement exists.'" *Holmes v. Credit Acceptance Corp.*, No. 5:20-cv-0613-LCB, 2021 WL 942080, at *2 (N.D. Ala. 2021) (quoting *Carusone v. Nintendo of Am., Inc.*, No. 5:19-cv-01183-LCB, 2020 WL 3545468, at *2 (N.D. Ala. 2020)). "Alabama law holds a contract is formed when there is an offer, acceptance, consideration, and mutual assent to the contract's terms." *Id.* (citing *Freed v. Cobb*, 845 So. 2d 807, 809 (Ala. Civ. App. 2002)).

An arbitration agreement constitutes an offer to participate in arbitration. *See Junious v. Midtowne Fin.*, No. 5:21-cv-00069-HNJ, 2021 WL 5216882, at *5 (N.D. Ala. 2021) ("Plainly, therefore, Junious accepted Mid-Town's offer to arbitrate any

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

Title VII claims arising from her employment, and the parties mutually assented to the arbitration provision."). "Mutual assent to a contract is typically manifested by signature." *Carusone*, 2020 WL 3545468, at *3. A mutual assent by signature can further constitute an acceptance of an offer. *See Sides v. Macon Cnty. Greyhound Park, Inc.*, No. 3:10-cv-895-MEF, 2011 WL 2728926, at *4 (M.D. Ala. 2011) ("Here, Cobbs and Sides both evidenced their assent ang agreement by signing the Statements of Applicant which contained an agreement to arbitrate disputes with Victoryland."). An agreement between parties to give up the ability to resolve their claims against one another through the judicial system constitutes sufficient consideration for an agreement to arbitrate. *Holmes*, 2021 WL 942080, at *3 ("Likewise, the parties agreed that they would each give up the ability to resolve their claims against one another through the judicial system and pursue arbitration should any claims arise. This is sufficient consideration for an agreement to arbitrate.") (citing *Carusone*, 2020 WL 3545468, at *4).

Here, U.S. Auto Sales made an offer to Caines to submit claims to arbitration. *See* Schwartz Decl. ¶ 39, Ex. 15 at 2. Caines accepted this offer by virtue of her execution of the Arbitration Agreement. *See id.*, Ex. 15 at 2. The agreement to arbitrate claims constitutes sufficient consideration to form a contract under Alabama law. *See Holmes*, 2021 WL 942080, at *3. Accordingly, Caines entered into a valid, enforceable agreement to arbitrate her claims.

**6.    Westlake Is Entitled to Enforce the Arbitration Agreements.**

Plaintiffs' Accounts are subject to various servicing agreements under which WPM is authorized to act as an agent for the entities to whom their RISCs were assigned. Pursuant to its status as a servicing agent, WPM is entitled to enforce the Arbitration Agreements.

**a)    The Hueston, Laney, and Davis Accounts.**

On May 22, 2023, U.S. Auto Sales, U.S. Auto Finance (collectively, "U.S. Auto"), Midcap Financial Trust ("Midcap"), and WPM entered into a Tri-Party

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

Servicing Agreement. *See* Schwartz Decl. ¶ 43, Ex. 16. On June 21, 2023, the Tri-Party Servicing Agreement was amended to substitute Auto Loan Pool Trust and Auto Holder LLC (the "Owners") as parties to the agreement in place of U.S. Auto. *See id.* ¶ 44, Ex. 17. In particular, pursuant to the Amended Midcap Agreement, the Owners acquired Contracts, related Receivables, and Financed Vehicles from U.S. Auto pursuant to a sale of U.S. Auto's assets. *See id.* ¶ 44.

The Amended Midcap Agreement specified that WPM "is hereby authorized to act as an agent for [the Owners] and in such capacity shall manage, service, administer the Contracts and collect the Receivables, and perform the other actions required by the Servicer under this Agreement. In performing its duties hereunder, the Servicer shall have full power and authority to do or cause to be done any and all things in connection with such servicing and administration which it may deem necessary or desirable, within the terms of this Agreement." *Id.* ¶ 45.

As set forth in the Amended Midcap Agreement, the companies for which WPM was authorized to act as an agent were Auto Loan Pool Trust and Auto Holder LLC. *See id.* ¶ 46. WPM was defined to mean the "Servicer." *Id.* The contracts subject to the Amended Midcap Agreement "consist of the Initial Contracts and Additional Contracts added to the coverage of [the Amended Midcap Agreement] on one or more Additional Receivable Coverage Dates." *Id.* "Initial Contracts" include "the Contracts covered by [the Amended Midcap Agreement] as of the Closing Date." *Id.* at 8. "Contracts" included any "motor vehicle retail installment contract executed by an Obligor in connection with its purchase of a Financed Vehicle from U.S. Auto Sales, Inc., pursuant to which an extension of credit was made by U.S. Auto Sales, Inc. in the ordinary course of its business to such Obligor and which is secured by such Financed Vehicle" appearing on Schedule A to the Amended Midcap Agreement. *See id.* The Hueston, Laney, and Davis Accounts were included in Schedule A to the Amended Midcap Agreement. *Id.* Accordingly, the Hueston, Laney, and Davis Accounts were subject to the Amended Midcap Agreement. *Id.*

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

In connection with the Amended Midcap Agreement, the Owners also executed and delivered powers of attorney to WPM. *Id.* ¶ 47. Pursuant to this power of attorney, the Owners authorized WPM to "file or prosecute any claim, litigation, suit or proceeding in any court of competent jurisdiction or before any arbitrator, or take any other action otherwise deemed appropriate by [WPM] for the purpose of collecting any and all such moneys due to [the Owners] whenever payable and to enforce any other right in respect of the Contracts or the related Financed Vehicles" and engage in "all acts and other things that [WPM] reasonably deems necessary to perfect, preserve, or realize upon the Contracts or the related Financed Vehicles, all as fully and effectively as it might do." *Id.*

Accordingly, WPM is entitled to enforce the Arbitration Agreements for the Hueston, Laney, and Davis Accounts pursuant to its status as the Owner's agent under the Amended Midcap Agreement and pursuant to the powers of attorney executed by the Owners in connection with the Amended Midcap Agreement. *See Aliff v. Vervent, Inc.*, No. 20-cv-00697-DMS-AHG, 2020 WL 5709197, at *8 (S.D. Cal. 2020) ("Agency is one ground upon which a non-signatory may force a signatory to arbitrate.") (quoting *Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1081 (C.D. Cal. 2007)).

### b)    The Moody and Caines Accounts.

Similar to the other Plaintiffs' Accounts, the Moody and Caines Accounts were subject to a servicing agreement between US Auto Warehouse – 003, LLC ("U.S. Auto Warehouse"), WPM, and two other entities, which was also entered into on May 22, 2023 (the "Warehouse Servicing Agreement"). *See* Schwartz Decl. ¶ 48, Ex. 18. In particular, the Warehouse Servicing Agreement specified that U.S. Auto Warehouse acquired Receivables pursuant to a separate Loan and Security Agreement. *See id.*

The Warehouse Servicing Agreement further contained language nearly identical to that of the Amended Midcap Agreement authorizing WPM to act as an

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

agent for US Auto Warehouse.  *See id.* ¶ 49, *see also, supra*, Section III.B.6.a.

As set forth in the Warehouse Servicing Agreement, the company for which WPM was authorized to act as an agent under the Warehouse Servicing Agreement was US Auto Warehouse.  *Id.* ¶ 50. WPM was defined to mean the "Servicer."  *Id.* The contracts subject to the Warehouse Servicing Agreement "consist of the Receivables set out in Schedule A hereto."  *Id.*  "Receivables" included "indebtedness owned by an Obligor under a Contract . . . arising out of or in connection with the sale, refinancing or loan made by [U.S. Auto Finance] . . . with respect to a Financed Vehicle in connection therewith. . . .  A schedule of the Receivables as of the Closing Date appears on Schedule A."  *Id.*  "Contract" included any "Installment Sale Contract, as such term is defined in the Loan Agreement."  *Id.* at 5.  The "Closing Date" means "May 22, 2023."  *Id.*  The Moody and Caines Accounts were included in Schedule A to the Warehouse Servicing Agreement.  *See id.*  Accordingly, the Moody and Caines Accounts were subject to the Warehouse Servicing Agreement.

WPM is therefore entitled to enforce the Arbitration Agreements for the Moody and Caines Accounts pursuant to its status as US Auto Warehouse's agent under the Warehouse Servicing Agreement.  *See Aliff*, 2020 WL 5709197, at *8 ("Agency is one ground upon which a non-signatory may force a signatory to arbitrate.")

### c)    Plaintiffs Are Equitably Estopped from Contradicting Their Allegations in the Complaint.

Regardless of WPM's evidentiary proffer with this motion, Plaintiffs have already conceded in their Complaint that Westlake is the "servicer and/or assignee" of their respective RISCs.  *See, e.g.*, Compl. ¶ 150 ("Westlake is a servicer and/or assignee of the RISC."); *see also* Compl. ¶¶ 6, 33, 50, 65, 88, 99, 115, 134, 140, 156, 166, 169, 178; *Vargas-Ramos v. Specialized Loan Servicing LLC*, No. CV 22-05443-MWF (JCx), 2022 WL 18397505, at *4 (C.D. Cal. 2022) (declining to consider assertion by the plaintiff in opposition to a motion to dismiss that "directly contradicts

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

the allegations in the Complaint"); *Jackson v. 14856 Magnolia Blvd. Real Estate LLC*, No. CV 19-10898 FMO (Ex), 2020 WL 4342259, at *2 (C.D. Cal. 2020) (declining to consider assertion by the plaintiff in opposition to motion to dismiss that "contradicts [the] Complaint"); *Frontera Television Network LLP v. Sada*, EDCV 12-00920 VAP (DTBx), 2012 WL 13128037, at *5 (C.D. Cal. 2012) (disregarding "argument [that] is contradicted by the Complaint").   Based on Plaintiffs' allegations alone, WPM is entitled to enforce the Arbitration Agreements.

## C.    Plaintiffs' Claims Fall Within the Arbitration Agreements' Broad Scope.

An "order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors*, 473 U.S. 614, 626 (1985); *see also Simula, Inc. v. Autoliv Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("The standard for demonstrating arbitrability is not high.").  Where the scope of matters to be arbitrated is broad, as in the Arbitration Agreements, there is a heightened presumption of arbitrability such that, "'[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)).[2]

---

[2]      *See also Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (holding that the terms such as "any disputes" and "all claims" are broad in scope); *Simula, Inc.*, 175 F.3d at 721 (holding that "language 'arising in connection with' reaches every dispute between the parties having significant relationship to the contract and all disputes having their origin or genesis in the contract"); *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*, 952 F.2d 1073, 1077 (9th Cir. 1991), as amended on denial of reh'g (Dec. 18, 1991) (noting that "presumption [of arbitrability] is particularly potent if the arbitration clause is broad.").

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

Here, the Arbitration Agreements expressly cover "[a]ny claim or dispute, whether in contract, tort or otherwise (including the interpretation and scope of this clause and the arbitrability of any issue) . . . which arises out of or relates in any manner to the purchase, financing, or lease of your vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Arbitration Agreement, such as an assignee of the Contract or Lease Agreement)." Schwartz Decl. ¶ 40, Exs. 3, 6, 9, 12, 15 at 1.

Plaintiffs' claims are based entirely on allegations regarding the application of funds paid to WPM, including allegations that funds were not properly applied to vehicle service contracts purchased in connection with the Accounts, *see* Compl. ¶¶ 22–28, payments that were allegedly not credited to Plaintiffs' Accounts, *see id.* ¶¶ 29–36, and mandatory post-repossession notices that allegedly were not sent. *See id.* ¶¶ 37–44. These claims all arise out of or are related to the purchase and/or financing of Plaintiffs' vehicles and/or a resulting transaction or relationship. Because Plaintiffs' claims fall squarely within the scope of the Arbitration Agreements, the Court should grant the Motion and compel arbitration.

## D. Any Questions Relating to the Interpretation and Scope of the Arbitration Agreements Are for the Arbitrator.

A party has the right to judicial determination of the issue of arbitrability unless the parties "clearly and unmistakably provide otherwise." *AT&T Techs.*, 475 U.S. at 649. A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement," such as the interpretation, validity, scope, and enforceability of the arbitration agreement. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Because Plaintiffs agreed to a delegation provision in the Arbitration Agreements, any question regarding the interpretation and scope of those agreements are for the arbitrator, not the Court, to decide.

Courts agree that delegation provisions are enforceable. *See, e.g. Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) ("[A] court must enforce an

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator."); *see also Dunn v. Global Trust Mgmt., LLC*, 506 F. Supp. 3d 1214, 1230 (M.D. Fla. 2020) ("When an agreement 'clearly and unmistakably' delegates these threshold issues to the arbitrator, the court's work is done—the case must go to the arbitrator."); *CPR-Cell Phone Repair Franchise Systems, Inc. v. Nayrami*, 896 F. Supp. 2d 1233, 1241 (N.D. Ga. 2012) ("Under [*Given v. M & T Bank Corp. (In re Checking Account Overdraft Litig.)*, 674 F.3d 1252, 1255 (11th Cir. 2012)], once the district court finds clear and unmistakable evidence of an intent to arbitrate gateway questions, the district court is required to compel arbitration."); *Rutledge v. Santander Consumer USA Inc.*, No. 6:20-cv-04214-DCC, 2021 WL 2949860, at *3 (D.S.C. 2021) ("[I]t is well-established that parties 'can agree to arbitrate arbitrability,' so long as their agreement 'clearly and unmistakably' delegates the arbitrability question to the arbitrator."); *Brookdale Senior Living Inc. v. Weir*, No. 3:20CV293-GCM, 2021 WL 3464966, at *2 (W.D.N.C. 2021) ("When faced with a valid delegation clause, the court is required to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues.  The Fourth Circuit has routinely recognized this principle, explaining that questions of arbitrability will be delegated to the arbitrator when the agreement '"clearly and unmistakably' provide[s] that the arbitrator shall determine what disputes the parties agreed to arbitrate.") (citations omitted) (collecting cases); *Chambers v. Groome Transp. of Ala.*, 41 F. Supp. 1327, 1336 (M.D. Ala. 2014) ("[C]ourts should enforce valid delegation provisions as long as there is 'clear and unmistakable' evidence that the parties manifested their intent to arbitrate a gateway question.").

Here, the Arbitration Agreements delegate questions of arbitrability to the arbitrator, stating that "[a]ny claim or dispute, whether in contract, tort or otherwise **(including the interpretation and scope of this clause and the arbitrability of any issue**) . . . shall, at your or our election, . . . be resolved by neutral, binding arbitration and not by a court action."  Schwartz Decl. ¶ 40.  Therefore, even if Plaintiffs were

to question whether their claims fall under the scope of the Arbitration Agreements, or question the interpretation of the Arbitration Agreement, that would be an issue for the arbitrator to decide, not the Court. *See AT&T Techs.*, 475 U.S. at 649; *Jackson*, 561 U.S. at 68.

**E.    The Action Must Be Dismissed or Stayed Pending Arbitration.**

All of the Plaintiffs must arbitrate their claims on an individual basis. Because all of the claims raised in this action are subject to arbitration, the Court should dismiss this case in its entirety. However, should the Court find that dismissal is not warranted at this stage of the litigation, this case should nonetheless be stayed pending completion of arbitration.

Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court "***shall*** . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added); *see Collins v. Burlington N. R. Co.*, 867 F.2d 542, 545 (9th Cir. 1989) (remanding case for district court to consider whether to compel arbitration and enter stay); *see also Balar Equip. Corp. v. VT Leeboy, Inc.*, 336 F. App'x 688, 689 (9th Cir. 2009) (reversing decision with instructions to stay action pending completion of arbitration). However, "[t]he Court has discretion to dismiss, rather than stay, an action if all claims are subject to arbitration, as is the case here." *Medina v. Circle K. Stores, Inc.*, No. EDCV 22-0557 JGB (DTBx), 2024 WL 1601247, at *2 (C.D. Cal. 2024) (citing *Forrest v. Spizzirri*, 62 F.4th 1201, 1204–05 (9th Cir. 2023)); *see also Pleasant v. Dollar Gen. Corp.*, No. EDCV 14-02645 JGB (KKx), 2015 WL 12811236, at *3 (C.D. Cal. 2015) (dismissing a Complaint with prejudice where an arbitration agreement contained an enforceable class action waiver and the plaintiff's individual claims were subject to arbitration). Because Plaintiffs' claims are subject to binding arbitration and must be arbitrated on an individual basis, this action should be dismissed or stayed pending completion of arbitration.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

## IV.    CONCLUSION

For the reasons above, WPM respectfully requests that the Court grant the Motion and enter an order: (1) compelling Plaintiffs to arbitrate their claims against WPM on an individual basis; and (2) dismissing or staying this action in its entirety pending completion of arbitration.

Dated: April 22, 2024                      **TROUTMAN PEPPER**
                                            **HAMILTON SANDERS LLP**


                                            By: */s/ Katalina Baumann*
                                            Katalina Baumann

                                            Attorneys for Defendant
                                            Westlake Portfolio Management, LLC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Westlake Portfolio Management, LLC, certifies that this brief contains 6,650 words, which complies with the word limit of L.R. 11-6.1.


Dated: April 22, 2024                **TROUTMAN PEPPER HAMILTON SANDERS LLP**


By: _/s/ Katalina Baumann_
Katalina Baumann

Attorneys for Defendant
Westlake Portfolio Management, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA, SUITE 1400
IRVINE, CA 92614

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2024, a copy of the foregoing **NOTICE OF MOTION AND MOTION OF DEFENDANT WESTLAKE PORTFOLIO MANAGEMENT, LLC TO COMPEL ARBITRATION AND STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES** was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

By:  */s/ Katalina Baumann*
Katalina Baumann